I'll call the case of Carol Tims v. LGE Community Credit Union. Adam Webb of Webb, Clase & Lemon, one of the firms representing the plaintiff appellant in this case, Ms. Carol Tims. Ms. Tims is one of a long line of bank and credit union customers who have challenged improper overdraft fees over the last decade or so. And let's be clear, she has no beef with overdraft fees in general, just the small fraction of overdraft fees that result from financial manipulations by LGE that do not specifically. I'm having some trouble before we even get to the legal issues. Your complaint is very sparse on facts. It's a very high level of abstraction, so I'm trying to figure out what you're conveying really happened to her. A hypothetical would be, let's assume she has $100 in the bank. She goes to a Shell gas station and she charges $40 worth of gas. She sticks the debit card in, then that $40 is gone. She then the next day, let's say, does another electronic charge for $70 or a check comes through for $70. She's now overdrafted. What I'm having trouble understanding, is that the scenario you're describing? I'm trying to figure out what you're talking about exactly. Yes. Thank you, Your Honor. That is a very important thing to understand, exactly what's going on here. That is a good scenario you raise. Let me just add a little bit of detail to that. If you have $100 in your account, as you said, and then you go and use your debit card, Walmart, Shell, whatever it is, you have an approval for that transaction. That does not take the money out of your account. Let's be clear. It doesn't take it. I understand you're saying that it may actually post a day or two later. Some other time. It may post quickly. Who knows? I guess my question is, what we're talking about here in terms of a contract interpretation, is what the parties agreed to are reasonably understood. In terms of this Reg E, it's what the consumer was notified of. I guess my thought would be, I don't know if I'm the reasonable man, the least sophisticated, the most sophisticated, I don't use debit cards. I would think that when I put a debit card in, and it's for $40, and I know I've only got $100, and the next day I do a debit for $70, my common sense reaction would be, dang, that $40 is gone. I got the gas, it's electronic, it's gone, and the next day the $70 is gone. My expectation would be, I'm overdrawn, but that obviously is not what you think is what a reasonable consumer would think or a person would believe. So explain to me why my perception is not accurate. You're absolutely right, Your Honor. This is primarily a breach of contract case, so look at the contract. There are two varieties of these contracts that are out there. There are those that say, we assess overdraft fees based on the money in your account, based on the actual funds in your account, the ledger balance in your account, there's lots of ways to say this, the actual money in your account. But why in the wording they use, which again, there is a high level of abstraction in their words, there's not a lot of detail. Why do their words not convey what my understanding would be? That money's gone the second I put that debit card in. The wording that is used by LGE in the contract that's attached to the complaint, the amended complaint, is exactly the wording you would use if you use an assessment of overdraft fee system that I am talking about, the ledger balance, the actual balance of funds. It's exactly and precisely what is used by- You're saying that a person, the customer could understand, contrary to what my understanding would be, your customer could understand, actually your customer's a little bit of a kiter. So your customer's saying, well, okay, I've got that $40, but it's not going to really come out until maybe tomorrow and then I'll do something else and maybe that'll be the next day. A legal kiter. And your person's a little more sophisticated. They're kind of playing the timing of it. And that's what you're saying a customer who could be engaged in that sort of thinking would understand it to be. It's actually just the opposite in the sense that you're suggesting that the bank is covering some funds. That is exactly what we're saying does not occur. There is never an overdraft, as you and I think of it, in this case. Ms. Timms doesn't want a single dime back when she actually overdrafted, when they covered some funds for her, when there was a negative balance in her account. She doesn't want a single one of those overdraft fees back. About 15% of overdraft fees are caused if a bank or a credit union assumes and adopts this policy of available balance generation of overdraft fees. Consultants go around and they whisper in the bankers' ears. Well, that doesn't help me. Let's stay on the hypothetical. Well, we have to look at the contract, Your Honor, and the contract is what was used by Some credit unions, and you've seen the cases, there's over a dozen cases we've put in front of you with very similar scenarios. Some of those have language where it says, we will assess an overdraft fee based on your available balance. It describes what that means. Well, you're saying they haven't paid, but they're on the hook, aren't they? The credit union's on the hook for the 40, and they see when the next day the $70 comes through, they think, uh, we're on the hook for the 40, but you're saying they still can't overdraft until, even though they're on the hook, they have to ignore that, wipe that out of their minds. We're only talking about when there's an actual negative balance. We don't want anything, trust me, Your Honor, most times that transaction goes through in two or three days, the money's not there, and the overdraft occurs. That's not this claim in this case.  Your paycheck comes in on Friday, you have hundreds of dollars in your account, before Shell comes in on Monday and says, we'd like our $40. You have hundreds of dollars there, they have never covered a dime of your negative balance. There is no overdraft. You mean, like your paycheck might come through in the interim or something? Absolutely. We're only talking about a small fraction of total overdraft fees. That's an important distinction here. It's only when that never actually goes into the negative. Now, we can talk about the ethics of that. I think that might be improper at all times, but this case wouldn't exist if they had described it the way they actually do it, and Ms. Timms had agreed to it, just as Your Honor has said. That's not what they did. They used the old language, and if you look at why this court, at the district court, excuse me, reached the decision it reached, it's because it doesn't actually look at the contracts at issue. This contract has the funds availability policy, and I want to know how you answer the argument that if we interpret the agreements together, as I think we all agree we must, that your interpretation would render that funds availability policy meaningless. Once again, that is taking a very narrow focus of this contract, and we encourage the court to review the contract. It's attached, and we all agree. But if we construe the contract that way, where does that get us? Funds availability has nothing to do with this, Your Honor. Funds availability is under a different federal statute, requires every bank to put in, or credit union to put in its agreement. It says when you come in with an out-of-state check, or a business check, or a government check, when are those funds going to be available? How is that different from what you're arguing? We are only talking about funds being deducted from the account for ATM and debit card transactions that are approved and not paid. That is not mentioned in the funds availability disclosure. You're saying the funds availability policy only deals with deposits, whereas what you're concerned about are debits. That's all that's in there. And if you go on and look at the specific language about the program that's at issue in this case, it's called courtesy pay. The judge didn't even cite this language, even though we have it in the complaint, paragraph 17 of the complaint, even though it was much briefed. It says on page 10 of the contract, quote, you are not charged for using courtesy pay unless you present an item against insufficient funds. Present an item against insufficient funds. We're only saying... Couldn't that language go either way, though? It depends what you mean by insufficient funds. If you look at it, first of all, that language is not mentioned in the court's order. If you look at it in TOTO, then it cannot go the other way because it says present an item. Usefully, the district court cut that language out of the first quote that it used. Presentation is when the merchant is asking for the money. It is not when the item was approved at the merchant, a swipe of a card, for example. But again, that's a matter of how you interpret those words, right? No, the court does not get into the word presentment. But set aside what the district court did. Yes. In the courtesy pay section, it's very clear what it should be. Also in the general section, it says, and the court cuts this language out, it says we pay the item creating an overdraft. That's when an overdraft fee can be charged. That's on page two of the contract. When they pay the item, which they don't do in this case, we don't want any money back when they paid anything. It's only the money back when they concocted an imbalance and said that you went below the fake balance, not your real balance of funds. So when it says we pay an item creating an overdraft, we all know what overdraft means. That means you're in the negative. That never happened on any of the claims, any of the refunds being claimed in this case. So you're saying we pay the item means the item is actually settled as opposed to authorized. Yes, that's what it has to mean. The court exempted that language from its analysis and therefore didn't have to get into that, but that was not a fair reading of the contract. I could ask our presiding judge, we haven't gotten to me what's an even more difficult issue. Is it okay, Judge Martin, if we go into that a little bit? Regulation E claim, I understand on the contract claim it's up or down. You know, we'll rule with you, we won't rule with you on whether or not the contract covers. The regulation E claim, how does that differ from the breach of contract claim in the sense that if you assume that the consent form has similar wording to the contract language, maybe it doesn't here, but assume that it does, I mean, doesn't the regulation E claim rise or fall on the breach of contract claim? How is it any different? Is it any different? Yes, it is different because what is required in that is that you must disclose to somebody before they sign the opt-in what you're going to do and how the fees are going to be assessed. So it has a different standard. It has to be full disclosure. Well, let's say on the breach of contract, let's assume the wording is very similar on the contract itself and then on the consent form. And let's assume that you get past summary judgment, but the jury rules against you. They don't find a breach of contract. Suddenly does your Reg E claim disappear too because it's just totally tied to the breach of contract claim? Does it rise or fall with that claim? It doesn't because what the federal law requires is that you have a separate piece of paper, one piece of paper. It has to be separate. I understand, but assume the wording is the same and so some court or some jury said there's no breach of contract, whatever, so there was enough to advise. Does that then necessarily mean that the consent form subject to Regulation E is also adequate? It does not necessarily because the burden under the federal law is that you must be fully disclosing of when you're going to assess an overdraft fee, which unquestionably And the jury just said that you did that with the contract, right, with their contract ruling. Once again, saying it is a breach or not a breach of contract is a little different than saying you comply with federal law by putting in this one page full disclosure of when you're going to assess overdraft fees, which unquestionably does not occur in this document. I guess here, my last thing and I'll yield some time to somebody. It just seems odd to me. We have a federal reg that says you need to disclose, you know, some things. You need to disclose what your policy is and so always with lawyers involved, you're going to have this consent form and some people are going to say, gosh, that's just a C plus disclosure. I'd really like an A plus disclosure and Judge Thrash says it's okay. Maybe we'll say we're different judges and it's not okay. Have you violated the federal reg that asks for disclosure just because when we're grading your paper, we say, eh, I wish you'd added a few more words. That seems to me an odd way for a federal regulation to work. Help me with that. Please understand, most banks and financial institutions use the ledger balance to assess overdraft fees. I'm just telling you, help me with that. I don't understand how. Yeah, so that's the form that has been published and that's the form that LGE used. It has chosen, however, to make an extra 15% on overdraft fees by changing its program. It has to, therefore, disclose. But you're not answering my question of what we do when we see a consent form that we all say, and we all would say this, we don't understand in all these contract cases why people just don't say things in plain English and why we have these cases, but they don't always do that. So, we'd be a little critical of that, but does our criticism and our thoughts there could be a bit more precision translate to the fact that the bank has now violated the disclosure practice because we think we can improve the wording. How do we deal with that? Well, I would deal with it the way the federal regulators have. You look at paragraph 27 of our amended complaint. It goes through the exact analysis where banks have switched, credit unions have switched from using one method of balance assessment to another, and they have not changed their disclosures. It's paragraph 27 of our complaints. And that, therefore, is an inaccurate description of what they're doing. And that causes people real losses, 15% more overdraft fees, that could be hundreds of dollars a year to the most vulnerable population amongst us. And that is not allowed. So, when your honor asks, can they use this form that we could differ about, the answer is no. When they fundamentally change their program, as the federal regulators have looked at, they must change that form to catch up with and give good notice to the people who are suffering under the yoke of that. Thank you. I just have a follow-up about that claim, and you can answer it now or when you get back up. But it seemed to me that Judge Thrash got that one right on the Electronic Fund Transfer Act. I mean, they use the forms that the Federal Reserve publishes, and so don't they come within the safe harbor of the Act by doing that? If you had kept their policy the same and adopted overdraft fees based only on the ledger balance, then absolutely. But they changed, they made a material change from what the banks that are allowed to use that model program use. And you can't start assessing 15% more overdraft fees because of a new policy and make no change to this form that is supposed to be fully disclosing to the public. That's all we're saying. They had to act. Well, they disclosed everything the Federal Reserve put out there for them to disclose. They say it must be accurate description, and that was an accurate description of how most financial institutions assess those fees. They do it based on the cash in the account. They don't at LGE, and so they had to make a minor change to explain that to the customers. That's all we're saying. They did not do that, so it does violate EFTA. It would be a simple change, and they could do it in a very common sense way. Many banks and credit unions have done so. Until they do so, they are violating EFTA if they charge overdraft fees based on a fictional balance, not the balance of actual money, which is what it says on the first line of their EFTA disclosure. Thank you. Thank you. Good morning. May it please the Court. My name is Brandon Wilson, and I represent LG Community Credit Union. I want to just cut to the chase if I can. I hope the Court appreciates it. I want to piggyback off of the questions you asked, my friend. First and foremost, this is not a switching case. This is not a case which involves a situation where the credit union changed balance calculation methods midstream. There is an example in one of the CFPB white papers that my friend cited, too, and Judge Thrash dealt with that issue, I think, very adequately in his opinion. But factually speaking, there's no allegation in the complaint that this is a switching issue. The issue here, and the issue that has been raised in many of these cases, is that the plaintiff contends that the credit union's account agreement does not actually describe the available balance method. Judge Carnes, to your question with the example, and forgive me if I'm getting it wrong, but I believe you were talking about a $40 debit card transaction. The important thing to keep in mind here, when you make that $40 debit card transaction, it may take a day or two to post to the account, but importantly, the credit union, by authorizing it with the merchant, becomes immediately responsible for paying it. And so this is not, the available balance method is not some crazy scheme by the credit union to drive up overdraft fees. In fact, the available balance method is basically the same concept as those of us that still have a checkbook are used to. You write a check, the check goes out, it may take some time for it to hit the account, but you know you've written that check, and so you don't have the funds to spend. But I think his argument is that most of the time, and I don't know how big a class this would be, most of the time this person's going to overdraft eventually anyway, but I think what opposing counsel's saying is you've got that $40 that you, me, I'd think it's gone, but you think it's gone, and so the next, let's say, a day, you also do a $70 debit, and so the person might think, oh, the credit union might think they're done, except the fact is before the credit union actually has to pay that day two, we have a paycheck that comes through that's, let's say, credited immediately. So the truth and the reality of the situation is while for that first day the credit unions should be a little anxious, uh-oh, they're going to overdraft, the truth of the matter is the credit union never had to pay that money, and they were never out anything, and they charged a fee that really, I think I've got plaintiff's argument right, that really, they were on the hook, but they actually, as it turned out, due to the confluence of any overdraft. Even if we subscribe to that idea, one of the questions from the panel this morning to my friend was, what about the funds availability disclosure? I would submit to you that that disclosure is dispositive, and it's fatal to the plaintiff's claim in this case. But doesn't that just deal with deposits, not debits? It does deal directly with deposits, but it makes clear, more importantly, that not every dollar in the account is available for use, and it gives multiple examples of when money is not available for use by the member. But I don't see, just to give you a chance to respond, I don't see how your consumer, your customer would possibly get from this group of documents your method for debiting from their account. So Judge Martin, first, to respond to that question, the issue in this case, we're here after a 12B6 ruling, is whether the plaintiff's interpretation, proposed interpretation, is plausible. And I would submit to you that it's not. If we go to the funds availability disclosure, it gives several examples of when money is not going to be available. One of those scenarios is when the member deposits an out-of-state check. If you look in the funds availability disclosure, it would say that $200 of your deposit is immediately available, and the balance, there'll be a hold for one or two days. In the Doman case, that's about deposits. It is about deposits, but the plaintiff in this case is attempting to show that her interpretation is the correct one, and I would submit to you that the absence of a similar provision or disclosure regarding withdrawals is not fatal to the claim. It just means it doesn't... Well, she doesn't have to show that her interpretation is correct, only that the contract is ambiguous. Yes, Your Honor, but the Georgia... And there are, you know, eight to ten courts that I see that have found contracts similar to this without a specific explanation of how debits relate to funds availability are ambiguous. So, two points, Your Honor. First, Georgia's canons of contract construction are unique. In fact, all the overdraft cases that are in the papers, not one of those states has similar canons of construction. Well, I understand that, but the words that those courts focus on either are or are not in this contract. Sure. And it seems to me they don't... The Chambers case does go your way, but in that case, the contract used the phrase available balance, which does not appear in this contract. There was a more detailed, there was an explanation of funds availability, and there were also examples of when overdrafts would occur. And none of that is present in this contract, isn't that right? No, not exactly. Am I wrong? I would agree with you that there are not specific examples like we see in the funds availability disclosure, but there are other places where this is described. There are two places I would direct your attention to. The first is, and it's in the section, payment order of your transactions. It says that Ms. Timms... Hold on a second. Let me get to you. Where in the contract is that? So, I'm starting, I believe it's on the bottom of page one. Of the account agreement? Of the account agreement, Your Honor, and going into page two. You may go ahead. So if we're there in succession, and Judge Thrash pointed this out in his opinion. But in one sentence, it refers to having enough money in the account. And then the next sentence refers to, it says, you will overdraft your account, or you'll be liable for overdraft fees if funds are not available to pay all of the items. And then in the next sentence, it says, you'll overdraft if, quote, if an item is presented without sufficient funds. Could you just read the sentence so I can try it? Sure. Let me... My pagination must not be yours. Why this is important to you is at the bottom of the page. Correct, Your Honor. So beginning there, the order in which items are paid is important. If there is not enough money in your account to pay all of the items that are presented. Okay, let me stop you right there. If there is not enough money in your account, that sounds to me like the plaintiff's interpretation. Well, I would submit to you that it doesn't support the plaintiff's interpretation because, for example, it's not just saying if you don't have money. It's clearly there's an adjective in front of the word money that is modifying that term. Right, but what does enough money mean? That's the whole question here. Well, we believe it means the available balance method, and we get that not from reading that We get the funds availability disclosure, and if I could just give the court an example on that, I think it'll demonstrate why this document must be read as using the available balance method. In the Doman case, they gave an example with the out-of-state check again, and when the check is deposited, there's the $200 amount of it that becomes immediately available. So when the deposit is made, her available balance is $200. However, her ledger balance is $5,000. That's the amount of the check that was deposited. So what Ms. Timms wants to argue is that she could then go and spend that $5,000. That's her ledger balance, even though that is directly contrary to what the funds availability disclosure says. That gets back into deposits again. I think Judge Pryor and I are thinking of debits. Use my hypo if that's simpler. $100 goes to the Shell Station, $40. That's on a Sunday. On the next day, Monday, she does $70. And at that point, you all would say we are overdrafting that $70, correct? Yeah, we're taking into account the actual purchases that the member makes and for which we become liable, yes. And their argument would be, though, on Tuesday, the next day after you charge her this money, her paycheck comes in that would be the kind of paycheck you'd automatically count. And none of the first two have posted, so really you weren't out any money. You thought you might be, but you really weren't. And I guess their argument on that is she did have enough money in her account to pay when you look at all. And I agree, this has got to be a small group of people for these kinds of things to happen. Yeah, I mean, to me, I would say your example there, Your Honor, is just electronic check kiting. You are riding the float. It is, but maybe under the contract, you can, you know, in the old days, you could kite your checks, too, as long as things went in the right order. I would argue not lawfully, but you may get away with it. But again, going back to this funds availability disclosure, the problem with this is Ms. Timms is coming before the court and saying, this agreement that I have with my credit union, it says that they use ledger balance. And that simply cannot be true unless the court is going to make the, or take the step to read different portions. I think what she's saying is, I read it to say they're going to use the ledger balance. I mean, you know, that language you say, there's not enough money in her account. She reads it, she says, yeah, well, there is enough money in my account. Because she has about the paycheck coming through? Well, or because, I mean, you say, you use the term, you're legally responsible to pay it. But if she looks at the balance online, it's still enough to cover the check that she's writing on the day. It may or may not. I mean, some of these accounts are set up such that you will see the debits in real time. But, I mean, it's just a contract question. Is, you know, what does that term mean? Is it ambiguous? Well, if it was ambiguous, what the district court did was, it went to step two. And it said, we need to attempt to harmonize this entire contract as one. And again, the court, I think, correctly reached the result. It did, because it acknowledged that the ledger balance and the funds availability disclosure are simply inconsistent. They don't jive. And so you can't read this agreement in that fashion. The other part of this agreement that also I would direct your attention to is in that same section. But it instructs Ms. Timms to make careful records, and I'm paraphrasing here, and to practice good account management. Again, the overriding theme of this agreement is that not every dollar in the account is available for use. And conversely... But an overriding theme is a little different from what the contract actually says. Well, poor choice of words. What the words actually say is that not every dollar is available. I mean, but the fact that she's encouraged to make careful records and practice good account management, that doesn't say anything about how the accounting is done. It does say, however, Your Honor, that when she has money in her account, she needs to keep track of, for example, deposits, holds on deposits, and debit transactions. What LG is saying is you need to take those things into account because we do. And so, again, the overall question in this case is not whether LG and Ms. Timms should have a better agreement. It's not whether this is a good agreement or a bad one. Before you use all your time, I want to direct you to the EFTA regulation part of the case. And maybe you could respond to what your opponent said on that claim. Yeah. So our argument and what the actual EFTA language says is that if the credit union uses the model form, it is immune from civil liability. I don't know how the drafters of that language could have been any more clear. His response to that is, well, yeah, those forms were good until the credit union changed their policy. And your response to that? This is not a change of policy case. That example appears again in a CFPB white paper. It's addressed in Judge Thrash's opinion. Well, what if, and I know this is a hypothetical, but what if the credit union decided that instead of charging individual overcharge fees, it was just going to withdraw $100 a month from everybody's account to cover any potential overcharges? You wouldn't argue that that disclosure would be sufficient to disclose that policy, would you, or to create a safe harbor? I would argue that you would need to read the opt-in form together with whatever account agreement they have to make that decision. And without knowing what the language is, I couldn't tell you yes or no. Well, my point is simply that the form does not create a safe harbor for any policy you could conceivably adopt about overdraft fees, right? Well, what the commentary to the regulation says is that your overdraft form, if you're using the model clause, you do need to make sure that that model language actually reflects what you're doing as far as overdraft policy. And to your point, Your Honor, what the form says, and it's not in the first section, which has kind of been batted around here, but in that form, the credit unions do disclose typically what the specific overdraft charge is. So for example, it would say we charge you $35 when you overdraft. So in your hypothetical, I would expect the credit union to indicate in the form what it's charging as far as a fee. So based on your argument that you have to look back to the account agreement, doesn't your argument with respect to this regulation rest on your interpretation of the contract? Well, it has to because, as Judge Thrash correctly did, you have to look at both documents together as one. So if we were to disagree with you on the contract interpretation claim, would we necessarily disagree with you on the EFTA claim? Well, I would argue no because I believe that the regulation is clear and when it says if you use the model clause, then you are in the safe harbor. And I haven't seen any argument to suggest that the term enough money must mean or can only mean the ledger balance method. Judge Thrash made a distinction between accurate and precise as to the opt-in agreement. What do you think that means? What's the difference? I'll do my best and if I'm wrong, I apologize to Judge Thrash. But I think what Judge Thrash was getting at there was probably his frustration with the fact that the Federal Reserve Board developed one form. It did so over many years of testing. It chose the specific words. This term, enough money, that was changed and swapped out and tested with folks. And at the end of the day, they came up with one form. And I think Judge Thrash was frustrated because he acknowledged that the regulators know that there's either a ledger balance used or an available balance method and yet they gave us one form which says an overdraft will occur when you don't have enough money. And so I think he's acknowledging the fact that that probably could have been stated more artfully. This is the same issue that the Chambers court grappled with. In Chambers, the judge said, you know, gosh, it would have been nice if we had an express definition of available balance but we don't and so we've got to do the best with what we do have. And in that case, of course, the court concluded that the agreement, as in this case, was for available balances. So unless the court has any other questions, I will yield to my friend. Thank you. Thank you. LGE is a sizable institution. It has over 100,000 customers in the state of Georgia. Studies show that over half of those people get an overdraft in a given year. So this is a big case that affects a lot of people. Those people often get multiple overdrafts and as I've said, the ones that get the most overdrafts are the most vulnerable. But you also said in your, when you started the first time though, that we are talking about probably what may be a small subset of, most of the people are going to really overdraft any way you look at it. And you're going to say if there's a real overdraft, if there's a real point at which the bank has to pay some, there's not enough money. We're talking about, I would think, a narrower group of people who, I don't know, is kiting illegal? I don't know whether that's, but who are sort of electronically kiting but under the contract maybe they think that's okay. I'm going to be very precise but that's the group we're talking about. Absolutely, about 15% of overdraft fees is all we're talking about here and I do want to push back a little bit on your honor. The person, the entity kiting here is LGE. They didn't used to do this. Nobody used to do this. Judge Martin and I had a case in 2008, 11 years ago, and Judge Martin went to great pains to understand what in the heck was Wachovia Bank doing? That was White v. Wachovia. And it was inexplicable to us at the time, to everyone at the time, these fees don't add up. You never went to the negative. Why are there overdraft fees? How do you respond to his argument that the regulators were aware at the time they created the form that financial institutions were using both the ledger and the available balance  They were aware that a few institutions were pushing the envelope. They decided that we're not going to set up a form that feeds to the bottom feeders and we're not going to set up a form that suggests they should go out there and engineer their software to manipulate transactions and get an extra 15% from the poorest among us. That was what they chose to do. We're going to do it the way most financial institutions do it. We're going to show that on this form. If you go out and do something radical in your program and going to assess more fees, you're going to have to update your form. Like Your Honor said, do you charge a $30 fee, a $35 fee? I've had one that charged a $42 fee. When do you charge it? How quickly do you charge it? Do you charge a sustained overdraft fee if your account is in the negative for 10 days, for example? All these things must be disclosed. They're very different forms. I don't think you've answered Judge Pryor's question. They understand the universe they're dealing with. They've got one form that will be applicable to both ledger balance and available balance. They know it's one or the other, and they say this is fine by us. Why is that not the safe harbor? That is not what they said. Please understand, the regulators said this is a model form. It has the form that you need to use. If the substance changes, as all these courts around the country have found, if the substance changes, you've got to change the substance. But your opposing client said you're not talking in your complaint about changing accounting methods or anything. You haven't alleged that. Yes, we do. In paragraph 27, we show exactly what's been happening. This has been a change across the country. Consultants are whispering in bankers' and credit union directors' ears, here's more money. Here's how you can do it. Nobody used to do this. And I can show you that Judge Martin and I wrestled with this 11 years ago. No one understood what was going on. Regulators didn't understand what was going on. But there was software engineering that was being rolled out across the country to jack up overdraft fees. And that's all this case deals with. It's that little slice that is improperly tabulated. The contracts didn't catch up. The overdraft opt-in form didn't catch up. LGE is on the hook for that. That's all this case is about. Thank you. Thank you. All right. That concludes our arguments for today. We're in recess and we'll reconvene tomorrow morning at 9 o'clock. All rise.